

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

STEVEN PACE, *et al.*, §
§
    Plaintiffs, §
§
v. § 2:21-CV-050-Z
§
ALEJANDRO MAYORKAS, §
*Secretary of Homeland Security, et al.*, §
§
    Defendants. §

## ORDER

Before the Court is Plaintiffs' Application for a Temporary Restraining Order ("TRO") with Equitable Relief (ECF No. 10). Plaintiffs ask the Court to issue a TRO that (1) sets aside the Centers for Disease Control and Prevention's ("CDC") February 2021 Notice exempting unaccompanied noncitizen children from its previous October 2020 Order suspending the introduction of certain aliens into the United States; and (2) orders the Defendants to enforce the October 2020 Order.

### BACKGROUND

This suit challenges administrative action taken by CDC regarding the entry of certain aliens from Canada and Mexico into the United States.

In March 2020, CDC issued a regulation and order limiting the introduction of certain aliens from countries with COVID-19 outbreaks. 85 Fed. Reg. 17,060 (March 26, 2020). This Order applied to "covered aliens," defined as persons "traveling from Canada or Mexico (regardless of their country of origin) who would otherwise be introduced into a congregate setting" at or near the border, "typically aliens who lack valid travel documents." *Id.* at 17,061. The CDC Order explained that covered aliens may spend hours or days in congregate settings

while undergoing immigration processing and that Ports of Entry and Border Patrol stations are "not designed for, and are not equipped to, quarantine, isolate, or enable social distancing by persons who are or may be infected with COVID-19." *Id.* at 17,061, 17,066. The Order also explained that holding covered aliens in congregate settings risks the spread of COVID-19 to Custom and Border Protection personnel and further transmission of COVID-19 to the U.S. population. *Id.* at 17,061. The Order noted that conditional release would "jeopardize . . . the public health" because many covered aliens "may lack homes or other places in the United States where they can self-isolate," and CDC "lacks the resources and personnel necessary to effectively monitor such a large number of persons." *Id.* at 17,067. CDC requested the assistance of the Department of Homeland Security ("DHS") in implementing the March Order because CDC lacks the capability and resources to do so. 85 Fed. Reg. at 17,067; *see also* 42 U.S.C. § 268(b).

In April 2020, CDC extended the duration of the Order by 30 days, explaining that "the determinations made in support of the March 20, 2020 Order remain correct," and "[i]f anything, they have become more compelling." 85 Fed. Reg. 22,424, 22,425 (Apr. 22, 2020). And again, in May 2020, CDC again extended the duration of the Order, subject to CDC's recurring 30-day review. 85 Fed. Reg. 31,503 (May 26, 2020).

In September 2020, HHS and CDC published a final rule permitting the CDC Director to "prohibit, in whole or in part, the introduction into the United States of persons from designated foreign countries" "for such period of time that the Director deems necessary to avert the danger of the introduction of a quarantinable communicable disease." 85 Fed. Reg. at 56,425 (codified at 42 C.F.R. § 71.40). The CDC Director then issued a new Order that suspends the introduction of all covered aliens into the United States, subject to certain exceptions, until he determines that "the danger of further introduction of COVID-19 into the United States has ceased to be a serious

danger to the public health," based on recurring 30-day reviews by CDC. 85 Fed. Reg. 65,806, 65,807-08 (Oct. 16, 2020) (the "October Order").

On February 11, 2021, CDC issued a notice of its decision to temporarily except from expulsion unaccompanied noncitizen children encountered in the United States, pending its forthcoming public-health reassessment of the October Order. 86 Fed. Reg. 9,942 (the "February Notice"). CDC explained that the COVID-19 pandemic continues to be a highly dynamic public-health emergency, and that it is in the process of reassessing the overall public-health risk at the United States' borders and the October Order based on the most current information regarding the COVID-19 pandemic and the situation at the Nation's borders. 86 Fed. Reg. 9,942.

Plaintiff Steven Pace is a resident of Potter County, Texas. Pace alleges he travels to San Angelo, Abilene, and Pecos for work and the government's decision to allow unaccompanied children into the United States increases the risk of Pace contracting COVID-19.

Plaintiff Brian Harrison is the former Chief of Staff of HHS and is a current resident of Ellis County, Texas. He also alleges that the government's decision to allow unaccompanied children into the United States unduly increases the risk that he will contract COVID-19.

Plaintiff Todd Little is Ellis County Judge and is bringing this action in his individual and official capacities. Like Pace and Harrison, Judge Little alleges in his individual capacity that the February Notice places him at increased risk for catching COVID-19. Additionally, as Ellis County Judge, he is charged by Texas law with administering and supervising Ellis County's health and human services. Judge Little is also Ellis County's director of emergency management and he manages the protocols for combating COVID-19 spread in Ellis County. In this capacity, Judge Little alleges the February Notice increases the risk of community transmission of COVID-19, placing additional strain on Ellis County's healthcare system and limited hospital capacity.

LEGAL STANDARDS

A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). The purpose of a TRO is to "preserv[e] the status quo and prevent[ ] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

A federal court sitting in equity has power to issue a TRO. FED. R. CIV. P. 65. The standard for a TRO is generally the same as the standard for a preliminary injunction. *See May v. Wells Fargo Home Mortg.*, 2013 WL 2367769, at *1 (N.D. Tex. May 30, 2013) (Fitzwater, C.J.) (quoting *Asadoorian v. Travis*, 2011 WL 2224984, at *1 (D. Mass. June 7, 2011)). The standard for a preliminary injunction consists of four factors that Plaintiff must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest." *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997) (citing *Roho Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)); *see also Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A TRO, like all injunctive relief, is an extraordinary remedy requiring the applicant to unequivocally show the need for its issuance. *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1789 (2014). The party moving for a TRO must carry the burden as to *all four elements* before a TRO may be considered. *Cf. Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013).

ANALYSIS

The Court finds, from the allegations set forth in the Amended Complaint, the Application, and the Memorandum and Declaration in Support, which are the only items before the Court, that Plaintiffs are not likely to suffer irreparable harm in the absence of a TRO. The Court therefore DENIES Plaintiffs' Application for a TRO.

To prevail in a showing of irreparable harm, a movant must demonstrate to the Court that another party will cause the movant specific, future injury unless the Court grants the movant's motion for a TRO. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 107 (1983). Speculative injury is not enough; there must be more than an unfounded fear on the part of the party moving for a TRO. *Holland v. America Ins. Co. v. Succession of Roy,* 77 F.2d 992, 997 (5th Cir. 1985).

Plaintiffs Pace, Harrison, and Judge Little in his individual capacity have failed to demonstrate to the Court's satisfaction that Plaintiffs will suffer any irreparable harm. Plaintiffs repeatedly assert that the February Notice increases their individual risks of contracting COVID-19 but never detail any actual examples of *non-speculative, future* harm that they could face over the *next fourteen days* before a full hearing on a preliminary injunction. Indeed, Plaintiffs' entire argument hinges on the unsupported proposition that "[t]hese alien children, once moving into the United States at the Southwest Border, frequently migrate into the interior of the United States and ultimately into places like Ellis County." ECF No. 10-2 at 9, 12. This statement, given multiple times, without source or citation, forms the crux of Plaintiffs' argument. But such *unsubstantiated* statements cannot form the basis for the awarding of the drastic remedy of a TRO.

For example, Plaintiffs never state how long it takes for unaccompanied children to migrate northward from the border. Nor do they allege that those same children who had COVID-19 at the border would still be contagious by the time they arrived in Potter or Ellis County. Nor do they

5

allege that any of the Plaintiffs will be in contact with a migrant detention center *in the next fourteen days*. The same flaws infect Judge Little's argument in his official capacity as well.

Plaintiffs' only other argument rests on a logical fallacy. Plaintiffs argue that CDC has stated that, absent the October Order, the introduction of aliens across the border would irreparably strain the United States healthcare system. ECF No. 10-2 at 17. This may be true. But Plaintiffs argue that the February Notice would be the equivalent of not enforcing the October Order *at all*. Plaintiffs cannot rest on the argument that excepting unaccompanied children from the October Order is the equivalent of not enforcing the October Order at all without some sort of evidence, citation, or logical argument to support that assertion.

CONCLUSION

Because Plaintiffs have failed to provide convincing evidence of future irreparable harm, Plaintiffs do not satisfy the requirements they must prove before the Court may grant the extraordinary measure of a TRO. Consequently, the Court DENIES Plaintiff's Application for a temporary restraining order without prejudice to Plaintiffs' ability to continue to pursue a preliminary injunction or to otherwise prosecute their underlying case against Defendants.

**SO ORDERED.**

March **25**, 2021.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE